IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAIME CRITCHFIELD,
    Plaintiff,

v.                                    Case No: 3:08cv32/RV/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

_____

REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Critchfield's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## PROCEDURAL HISTORY

Plaintiff, Mrs. Jaime Critchfield, filed applications for disability insurance benefits and SSI benefits on August 7, 2003.  Her applications were denied initially and on reconsideration and she requested a hearing before an Administrative Law Judge (ALJ).  Two hearings were held, on July 19, 2005 and again on July 21, 2006.  The ALJ found that plaintiff was disabled from her onset date of March 7, 2002 through April 5, 2004, but not thereafter (tr. 26).  The Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff was disabled from a March 7, 2002 motor vehicle accident through April 5, 2004 but not thereafter; that her description of her symptoms was not entirely credible; that after April 5, 2004 she had medically improved and had the residual functional capacity to perform the duties of sedentary or light work; and that after April 5, 2004 she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law

or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed.  *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The ALJ in this case issued a partially favorable decision, finding that Mrs. Critchfield was eligible for only a closed period of benefits. According to the ALJ, Mrs. Critchfield remained disabled from the date of a serious motor vehicle accident on March 7, 2002 through April 5, 2004, but not thereafter (tr. 14-15). Because the ALJ found that Mrs. Critchfield was disabled for a closed period of time, the medical improvement standard applies, and the burden is on the Commissioner to show that the claimant's condition improved after April 5, 2004 to the point that she could return to work. *Pickett v. Bowen*, 833 F.2d 288, 292 (11th Cir. 1987); *Waters v. Barnhart* 276 F.3d 716, 719 (5th Cir. 2002).

The Commissioner's regulations provide an eight-step sequential evaluation process to be followed in cessation cases to determine if a claimant's disability continues. This process is described as follows:

> First, the claimant must not be engaged in "substantial gainful activity." Second, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant's disability continues. If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the third step, namely, an assessment of whether there has been medical improvement of the claimant's condition. Fourth, if there has been medical improvement, it must be determined if that improvement is related to the ability to do work. If there has not been medical improvement, the examiner proceeds to the fifth step to determine whether any exceptions listed in 20 C.F.R. § 404.1594(d) and (e) apply. Sixth, if there has been medical improvement, it must be determined whether the claimant has a severe impairment or combination of impairments. If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the seventh step, an assessment of the claimant's residual functional capacity ["RFC"]. The assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the eighth and final step of the evaluation process to determine whether, in light of his or her RFC, age, education and work experience, the claimant can perform other work.

*Whetstone v. Barnhart,* 263 F. Supp.2d 1318, 1321-23 (M.D. Ala. 2003), *citing* 20 C.F.R. § 404.1594(f)(1)-(8). In cessation cases, the "appropriate inquiry is whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." *Id.* at 1322, *quoting Chumbley v. Shalala*, Case No. 92-12VAL (RLH),1994 WL 774030, at * 3 (M.D. Ga. November. 22, 1994) (citations omitted). In order to find that the claimant's condition has improved, the ALJ "must compare original medical evidence [which supported a finding of disability] and new medical evidence." *Id.* at 1322 (emphasis added), *citing Williams v. Apfel*, 73 F. Supp.2d 1325, 1337 (M.D. Fla. 1999) (*citing Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984)). The burden is on the ALJ to show that there has been medical improvement; and, in order to show this, there must be evidence of medical improvement in the form of "symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1594(b)(1).

## PLAINTIFF'S MEDICAL HISTORY

Mrs. Critchfield alleges disability as a result of injuries suffered in a March 7, 2002 automobile accident in which she was ejected from her automobile, which then rolled over her and crushed her (tr. 133, 435). She received multiple severe fractures to her pelvis, as well as severe internal abdominal crush injuries, resulting in multiple surgeries and a colostomy (tr. 211). She was hospitalized for almost a month, and was then followed by an orthopedic physician, Bruce R. Buhr, M.D. (tr. 290-334). Dr. Buhr recorded extensive pelvic fractures requiring four surgeries in an attempt to improve the alignment of her pelvis and the fractures (tr. 289). Post-recovery, Dr. Buhr diagnosed traumatic arthritis in the damaged joints, right sacroiliac joint arthrosis, and pelvic malunion (tr. 289-90). On November 18, 2003, Dr. Buhr opined that Mrs. Critchfield was unable to do prolonged standing, walking or sitting (tr. 289). He noted that she could remain seated for only a few minutes at

a time, was unable to climb, squat or kneel, and was unable to carry more than a few pounds (tr. 289).  He felt that her condition would not get any better, and that she most likely would require additional surgery to improve her function and pain levels. However, Dr. Buhr described his proposed surgery as "dangerous" because Mrs. Critchfield, a Jehovah's Witness, was not willing to accept the medically indicated blood transfusions (tr. 290, 393).  She therefore declined to have the additional surgery, and Dr. Buhr did not have anything else to offer besides injections, which had provided no relief (*id*.).

On October 21, 2005, following the first hearing, the ALJ sent Mrs. Critchfield to be examined by Leo Chen, M.D., an orthopedic surgeon. Dr. Chen noted that Mrs. Critchfield had serious underlying pathology including a significant pelvic malunion, and right sacroiliac joint arthrosis which was posttraumatic in nature.  He stated that based on her history as well as his actual examination that Mrs. Critchfield "certainly has evidence of a significant pelvic injury" and that she "would certainly have a significant limitation in her ability to walk, stand, or sit for prolonged periods of time secondary to her injuries."  (Tr. 373).  Dr. Chen also completed a medical source statement regarding Ms. Critchfield's ability to do physical work-related activities.  He opined that Mrs Critchfield's lifting and carrying would be limited to less than 10 pounds, that she could stand or walk for less than two hours in an eight hour day, that her ability to sit was impaired, and that she must periodically alternate sitting and standing to relieve pain or discomfort.  He found that she should never climb, balance, crawl, or stoop, and that she could only occasionally kneel and crouch.  Dr. Chen was asked if there were medical/clinical findings which supported his conclusions, to which he responded "[p]atient has pelvic malunion with right SI joint arthrosis and leg length discrepancy. These would all impact her ability to sit, walk, stand for any length of time. She would be unable to safely perform any physical labor over 10 lbs."  (Tr. 377-78).

At the second hearing the vocational expert was asked if a hypothetical claimant with the limitations identified by either Dr. Burr or Dr. Chen could sustain employment, and the vocational expert replied that a person with those limitations could not (tr. 402, 405).

### DISCUSSION

Mrs. Critchfield argues that the ALJ erred in failing to give appropriate weight to the opinions of treating and examining physicians and in improperly rejecting her subjective complaints of pain, resulting in a finding that her condition had improved. She contends that she was disabled from her onset date, and that her condition did not improve, as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.  <u>Physicians' opinions.</u>

The ALJ rejected the opinions of both Dr. Buhr and Dr. Chen, finding that Mrs. Critchfield was disabled from the date of her automobile accident until the date of her last visit to Dr. Buhr, April 5, 2004. Thereafter she was held to have improved to the point that she was no longer disabled. The basis for this determination was twofold: that Mrs. Critchfield had not sought medical help since that date, and that she was taking no prescription medications for her pain, only ibuprofen.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985);

*Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical impairments at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not

**persuasive evidence of disability.** *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here the ALJ placed great emphasis on Mrs. Critchfield's failure to seek any medical care after she last saw Dr. Buhr on April 5, 2004.  He reasoned that Dr. Buhr had indicated that she could return to work if pain could be controlled.  However, Dr. Buhr's assessment was not so positive.  He actually said that "it *may be possible* for Ms. Critchfield to return to gainful employment *if we can control her pelvic pain*." (Tr. 293) (emphasis added).  That is not a statement that she "could" return to work.

The ALJ then determined that Mrs. Critchfield's pain was under control based on her daily activities and the fact that she did not take any prescription medication.  Mrs. Critchfield described her daily activities: the pain has never been controlled (tr. 396), she gets up in the morning after her children have eaten their breakfast (tr. 416), she spends her day changing from sitting to standing to lying down (tr. 390), she has to lie down at least four times a day, and naps some every day (tr. 391, 393), she never gets a good night's sleep (tr. 393), she can occasionally drive within a five mile radius, but she avoids driving because it is painful to use the pedals (tr. 392), she does a little housework, like rinsing the dishes, in short bursts, and then has to lie down (tr. 393, 417), she can make sandwiches for her children (tr. 417), she sits outside for a short while watching her children play in the back yard (*id*.), her husband makes dinner, although she can occasionally put a frozen lasagna in the

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

oven (tr. 418), she uses a hot tub, but her husband has to lift off the top before she can get in it (tr. 421), her eight-year-old daughter loads the dishwasher, sweeps the kitchen, vacuums, makes the beds, helps wash and fold the laundry, and helps care for the four-year-old (tr. 422, 424), her husband does all the heavy housework and the grocery shopping, although she can pick up a few things occasionally (tr. 423), and she goes to church but cannot sit still, and is uncomfortable having to dress up for church (tr. 423-44).

From this the ALJ found that Mrs. Critchfield "acknowledged [her] ability to perform many daily activities," in that she (1) did her own housework, (2) cared for two minor children, (3) drove an automobile, (4) did light shopping, and (5) attended church on a regular basis (tr. 22). The ALJ further described Mrs. Critchfield's daily activities as "relatively unrestricted." (Tr. 24). Therefore, since Dr. Buhr indicated that she "could" work if her pain was controlled, and since her daily activities, as allegedly acknowledged by Mrs. Critchfield, and as described by the ALJ, showed control of the pain, her condition had improved since she last saw Dr. Buhr.

As the ALJ repeatedly emphasized, his reasons for disbelieving the extent of Mrs. Critchfield's pain were her failure to take prescription medication and her failure to return to Dr. Buhr, or, as the defendant argues, "The ALJ correctly relied on Plaintiff's improvement in symptoms as evidenced by her lack of treatment." (Doc. 18, p.7). According to the ALJ, Mrs. Critchfield's lack of treatment was manifested in two ways: no medical care, and no prescription medication. Mrs. Critchfield explained why she did not seek medical care: Dr. Buhr had said there was nothing further he could do absent more surgery (tr. 425); Dr. Buhr could not promise that more surgery would work, and the surgery would require blood transfusions, which was against her faith (tr. 427); she has no insurance or money with which to pay a doctor (*id.*); she had taken oxycodone, percocet and fentanyl, all narcotics, but they made her "loopy," did not relieve the pain, and she did not want

to get addicted to narcotics (tr. 426); and a steroid shot worked only a little and for a short time, and cost $200 (*id.*). In short, going to a doctor would accomplish nothing, so she took "way more ibuprofen than [she] should." (Tr. 426).

It is noteworthy that the Commissioner's own regulations address this scenario in some detail. Social Security Ruling (SSR) 96-7p requires the ALJ to determine is there good reason why a claimant does not seek medical care. Among the matters deemed relevant by the Commissioner are whether daily activities are structured so as to minimize symptoms, whether a physician has told the claimant that no further, effective treatment could be prescribed, and whether possible medical treatment may be contrary to the teaching and tenets of the claimant's religion. The ALJ made no reference to these standards.

As to the matter of Mrs. Critchfield taking only ibuprofen, a fact repeatedly emphasized by the ALJ, that turns out to be less significant than the ALJ found it to be. Ibuprofen was first cleared for marketing as a prescription drug, Motrin, in 1974, and has been widely used in prescription strengths of 300, 400, 600 and 800 mg. In 1984 over-the-counter marketing of ibuprofen in 200 mg. strength tablets (or caplets) was cleared for adult use. The daily maximum non-prescription dosage is 1200 mg. That is, a person can take ibuprofen at the recommended dosage rate of up to six 200 mg. tablets per day. Any amount greater requires a prescription.[2] The undisputed evidence here was that plaintiff was taking 1800 to 2400 mg. daily, or up to twice the non-prescription amount (tr. 394). She was therefore taking a non-prescription medication at prescription strength.

Consequently, the ALJ's finding that Mrs. Critchfield was not taking prescription medication was not supported by substantial record evidence. While it is true that her physician did not prescribe ibuprofen at that level, that does not change the facts. And this makes a difference, because in his response to the

---

[2]http://www.motrin.com/generic.jhtml?id=/motrin/products/1_1_7.inc#q1

Case No: 3:08cv32/RV/MD

complaint, the Commissioner summed up his position by stating that the ALJ "properly relied on Plaintiff's improvement in symptoms as evidenced by her lack of treatment." (Doc. 18, p. 7). Under the circumstances it should have come as no surprise that plaintiff did not return for more treatment. Dr. Buhr had told her that there was nothing more he could do for her absent major surgery with a questionable prospect of success, and which would be more dangerous given her religious opposition to blood transfusions.

Finally, the ALJ's reasoning was circular. He reasoned that plaintiff was not in pain because she engaged in substantial daily activities in spite of how limited she described them to be; her description of her daily activities was exaggerated because she did not seek medical care, even though the evidence makes it clear that no medical care would have improved her condition; she did not seek medical care because non-prescription ibuprofen relieved her pain, even though there was no evidence that her pain was relieved, and she was taking prescription strength ibuprofen; and her pain was obviously relieved because she engaged in substantial daily activities. The ALJ did not refer to SSR 96-7p, described above, but he did ask Mrs. Critchfield why she did not seek additional medical care. She responded as above. The gist of the ALJ's holding was that he did not believe her reasons for not seeking medical care because her pain was under control, and he believed her pain was under control because she did not seek medical care. The ALJ greatly enhanced plaintiff's alleged acknowledgment of her daily activities, and emphasized her failure to go to a physician who had told her there was nothing else he could do for her. In effect, the ALJ ignored the requirements of SSR 96-7p, and substituted his own opinion as to how Mrs. Critchfield's problems should be handled medically.

It is also worth noting that Mrs. Critchfield last saw her treating physician, Dr. Buhr, on April 5, 2004, and the ALJ held that her condition had improved to the point that she was no longer disabled as of the next day. However, she was seen by Dr.

Chen eighteen months later, on October 21, 2005, and according to his findings there had been no improvement at all.

The ALJ erred. He did not properly address or discount Dr. Buhr's opinions, but in effect adopted his very tentative opinion that Mrs. Critchfield *might* work if her pain were controlled. The ALJ's finding that her pain was controlled was not based on substantial record evidence, and he completely ignored Dr. Chen's opinion that Mrs. Critchfield's condition had not improved in the eighteen months after the ALJ found improvement. The Commissioner failed to carry his burden of proving that Mrs. Critchfield's condition had improved as of April 6, 2004 to the extent that she was no longer under a disability.

2.  Subjective complaints of pain.

Mrs. Critchfield further contends that the ALJ erred in discounting her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability, and the law on that issue is well settled. Suffice it to say here that the ALJ's basis for rejecting Mrs. Critchfield's subjective complaints of pain was the same as his basis for rejecting the opinions of the Drs. Buhr and Chen. For the same reasons discussed above, the ALJ's determination in this regard was not supported by substantial record evidence.

CONCLUSION

This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. It is the law of this Circuit that where the ALJ fails properly to discount

the opinion of the treating physician, he is held as a matter of law to have accepted it as true. *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986). When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made. The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*. Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983).

The evidence here showed clearly that Mrs. Critchfield was disabled as of her last visit to Dr. Buhr (and indeed as of her examination by Dr. Chen), and the Commissioner has not carried his burden of proving medical improvement thereafter. The vocational expert testified that if the opinions of either Dr. Buhr or Dr. Chen were accepted, or if plaintiff's own testimony was fully credible, plaintiff could not work. The record has therefore been fully developed, and there is no need for remand.

Accordingly, it is respectfully RECOMMENDED that

1. The decision of the Commissioner be REVERSED.
2. The Commissioner be ordered to compute and pay benefits due to plaintiff on and after April 6, 2004.
3. The clerk be ordered to enter judgment in favor of plaintiff and close the file.

At Pensacola, Florida, this 6th day of February, 2009.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:08cv32/RV/MD*